# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHELLEY L. CRAGHILL-QUINN, | ) | 1:08-cv-1023 GSA |
| | ) | |
| Plaintiff, | ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## **BACKGROUND**

Plaintiff Shelley L. Craghill-Quinn ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On August 26, 2008, the action was reassigned by District Judge Lawrence J. O'Neill to the Honorable Gary S. Austin for all purposes.

# **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her application on May 25, 2005, alleging disability since August 3, 2004, due to lumbar degenerative disc disease. AR 120-122. Her application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 41, 104-109, 112-116. ALJ Bert C. Hoffman, Jr., held a hearing on September 10, 2007, and issued an order denying benefits on December 19, 2007. AR 51-88. On May 2, 2008, the Appeals Council denied review. AR 5-7.

Hearing Testimony

ALJ Hoffman held a hearing on September 10, 2007, in Fresno, California. Plaintiff appeared and testified. She was represented by Robert Ishikawa. AR 51-88.

Plaintiff testified that she was 49 years old at the time of the hearing. She graduated high school and has a couple years in college and/or trade school, yet did not earn a degree. AR 54. She is a certified massage therapist and completed secretarial training. AR 56. Additionally, she completed vocational training in hypnotherapy. AR 56-57. In 2000 through 2001, Plaintiff worked as a cashier clerk at a casino in Lemoore. AR 58. She last worked as a massage therapist in 1998. AR 59.

Plaintiff reported that she suffered from severe pain in her lower back and tailbone that makes it difficult for her to sit for long periods of time. She also suffers from chronic fatigue. AR 60. She has been seeing Dr. Sorensen in Hanford since 2003 for these symptoms, on average of once a month. AR 60-61. Within the previous twelve months, she has received about three injections for pain she feels in her tailbone and lower back that will sometimes radiate down her legs. AR 61-62.

A CT scan in 2005 showed a fractured vertebra for which there is no treatment. She was told she had severe degenerative disc disease and that there was nothing that could be done. Surgery has not been suggested. AR 62. Asked to describe her pain, she stated that it is

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

accompanied by severe fatigue such that she cannot leave the couch some days. She is tired everyday. AR 62-63.

She cannot stand for very long so she will take frequent breaks. She can no longer sweep, for instance, and takes numerous breaks while vacuuming. She cooks and washes the dishes, but does so sitting down. AR 63-64. The most weight she can lift is five to ten pounds, no more than three to four times a day. AR 64, 68. She can stand for ten to fifteen minutes before she must sit down as a result of the severe pain in her spine. AR 68. If she were employed eight hours a day, she guessed she could stand no more than two hours, and could sit comfortably for an hour or hour and a half total. AR 69.

Plaintiff has been married about two years. Her husband is disabled due to dementia and a past back injury. Her twelve-year old daughter lives with them, yet for a nine-month period was removed by Child Protective Services. Her daughter has since returned to the home. AR 65. Connected to the CPS intervention, Plaintiff was required to attend parent training on a weekly basis for sixteen weeks, and completed a related training program on own over a one year period. AR 66-68; *see also* AR 224-262, 364-453.

Plaintiff testified that she often lies down during the day, several times a day, for a total of four to five hours a day. AR 69-70. She has been using a cane for about a year, and testified that Dr. Sorensen prescribed a walker, but that she did not yet have one. AR 70.

Plaintiff obtains mental health treatment from Christine Fields at Kings View Mental Health on a weekly basis, and sees Dr. Wajda for prescription medications to treat anxiety, agitation, frustration, and nervousness. AR 71. She is currently taking buspar for anxiety. AR 72. She has difficulty concentrating and focusing on subjects that do not interest her. AR 72-73.

With regard to housework, Plaintiff testified that her daughter does the sweeping and mopping because she can no longer do so because of the pain. She cooks one meal a day, sitting down. She does the laundry. Her daughter assists her in yard work. AR 73. For example, she worked in the side yard recently and had to stop because of the pain in her back. She asked her daughter to complete the task of mowing that area. Her daughter maintains the front yard, and the back yard was "let go." AR 74.

3

Plaintiff performs any necessary driving duties for her family. She tries to limit her driving because it causes her pain, and estimated that she drives every other day on average. AR 74-75.

She believes she watches about four hours of television a day. She reads every day and enjoys mystery novels. AR 75. If she cannot sleep, she reads. She also reads during the day because she hates watching television all the time. AR 76.

She no longer makes crafts like she used to. Her house is small and it is difficult to do. AR 76. She has three small dogs. AR 76-77. Her husband's disabilities require her to do the driving and keep an eye on him because she is afraid he is going to fall. He also suffers from Parkinson's. AR 77. She does not like to leave her husband alone, but he too has difficulty walking and does not always go with her to do the grocery shopping. AR 78.

Plaintiff's daughter is twelve years old and in the seventh grade. AR 78. She participated in Little League last year, but does not currently participate in a sports activity. When her daughter participated previously, Plaintiff would attend every game. AR 79.

Plaintiff currently resides in Armona, having moved there from the Visalia area in June of 2006. AR 80. Her best friend Patty lives in the Long Beach area, but her friend Cindy still resides in the area. They used to play darts; now they get together and chat. AR 81-83.

Plaintiff currently takes Vicodin and Voltaren for pain. The Vicodin makes her sleepy, and as a result, she takes it three times a day, versus four times a day. AR 83-84. She takes her first dose at about 6 a.m. and is able to get her daughter off to school despite the side effects. AR 84. She takes the next dose at about 10 a.m. or so. At about 4 p.m. she takes the last dose. AR 85.

Medical Record

On August 3, 2004, Plaintiff was seen at Central Valley General Hospital for severe back pain after her fiancé "popped" her back. A number of follow up appointments followed on August 20 and August 30, 2004, and September 5, 16 and 21, 2004. AR 296-310.

A CT scan of September 21, 2004, found mild lower lumbar disc disease with mild lower facet arthritis. AR 315.

Plaintiff sought treatment of her back pain on October 12, 20 and 26, 2004, as well as on November 5, 15 and 24, 2004. AR 290-295.

A CT of Plaintiff's lumbar spine, performed November 24, 2004, revealed "destructive changes at L4" and mild osteoarthritis. AR 314.

On December 6, 14, 26 and 27, 2004, Plaintiff was seen by Dr. Sorenson for follow up treatment of her back injury. AR 286-289.

On December 28, 2004, Plaintiff was seen at Hanford Community Medical Center for lower back pain. The record indicated Plaintiff was using a wheelchair and continued to be treated by Dr. Sorensen. Morphine, Phenergan and Flexeril were ordered and administered. AR 198-202.

On January 4, 2005, Plaintiff was seen at the Hanford Community Medical Center for chronic lower back pain and pain in her legs. She complained of severe pain, and indicated the onset was August 2004. She was unable to stand, shower, or take care of herself. Toradol and Ativan were ordered and administered. Plaintiff's treating physician, Dr. Sorensen, referred her to UCSF/Stanford for neurological testing. AR 186-196.

On January 9 and January 20, 2005, Dr. Sorensen saw Plaintiff for back pain. A notation on the latter date includes a reference that she is "out of wheelchair" and was able to walk. AR 284-285.

On April 6 and April 13, 2005, Dr. Sorensen saw Plaintiff for treatment of severe back pain. Vicodin and Relafen were prescribed on August 13, 2005. AR 282-283.

An April 14, 2005, bone scan performed at Hanford Community Medical Center resulted in findings of an L4 vertebral uptake, compression fracture versus destructive bone lesion and a recommendation for further evaluation of the L-spine, as well as findings of mild osteoarthritic changes. AR 205.

On April 25, 2005, Plaintiff's treating physician, Dr. Sorensen, completed a California Employment Development Department Claim for Disability Insurance Benefits - Doctor's Certificate. Dr. Sorensen noted that Plaintiff had been under his care since August 3, 2004, and was seen on a monthly basis. He diagnosed degenerative disc disease, and indicated she had a

tender back and limited flexion. He prescribed oral pain medications to treat Plaintiff's symptoms. Dr. Sorensen indicated that he would release Plaintiff to return to regular or customary work on August 1, 2008. AR 206.

On June 28, 2005, Plaintiff advised Dr. Sorensen that she had gone to UCSF. She requested CT scans be performed. AR 276-277. CT Scans of the C-Spine, L-Spine and T-Spine were ordered. AR 278-280. Plaintiff was also seen by Dr. Sorensen on July 12, 2005. AR 274.

On July 19, 2005, Plaintiff saw Dr. Sorensen for a spider bite, lower back pain and prescription medication refills. AR 272.

On July 22, 2005, Stanford Medical Center advised the California Department of Social Services that it had no patient records relating to the care or treatment of Plaintiff. AR 208.

On August 19, 2005, Julianne Tran, M.D., completed a comprehensive orthopedic evaluation of Plaintiff. Plaintiff exhibited a normal gait, yet was using a cane that was too long for her. She claimed she uses the cane to take the pressure off of her leg. The examination revealed complaints of lumbar back pain with flexion and extension, and tenderness to palpitation of the right hip and right sciatic notch. The Fabere tests was "mildly positive on the right and negative on the left." No evidence of radiculopathy was detected. Motor strength was 5/5 in all muscle groups. Reflexes were 2/4 bilaterally. Dr. Tran diagnosed back pain due to lumbar compression and/or lumbar disk disease, and mild right hip pain. Dr. Tran found that Plaintiff should be restricted to activities that involve lifting no more than fifty pounds occasionally and twenty-five pounds frequently, or activities that involve frequent bending, stooping, kneeling, or crouching. There was no restriction regarding sitting, standing, or walking. There was no definitive restriction regarding climbing, balancing or working with height restrictions, but it was noted that frequent step and stair negotiation or uneven terrain may be restricted. No visual or environmental restrictions were identified, and it was noted that Plaintiff does not require an assistive device to ambulate. AR 209-212.

On September 9, 2005, James V. Glaser completed a Disability Assessment regarding Plaintiff. Dr. Glaser noted exertional limitations of occasional lifting of twenty pounds, frequent lifting of ten pounds, approximately six hours of standing or walking per eight-hour day,

approximately six hours of sitting per eight-hour day, and no restrictions as to pushing or pulling. Postural limitations included occasional climbing of ramps/stairs/ladder/rope/scaffolds, kneeling, and crouching. Plaintiff could frequently balance, kneel or crawl. No limitations were identified in the areas of manipulation, vision, communication, or environment. Dr. Glaser noted Plaintiff's symptoms are attributable to a medically determinable impairment, and that the severity of her symptoms are consistent with the total medical and non-medical evidence. AR 213-220.

On September 7, October 27, and December 19, 2005, Plaintiff saw Dr. Sorenson for treatment of her low back pain and for refills of her prescription medications, including Vicodin and Valium. AR 264-272.

On April 12, 2006, state agency neurologist Sadda Reddy, M.D., confirmed Dr. Glaser's earlier opinion following a review of the medical record. AR 220, 331.

Between September 2006 and July 2007, Plaintiff was seen over a dozen times by Dr. Sorensen for treatment of her back pain and refills of prescription pain medications. AR 341-352, 357, 359-362.

On July 3, 2007, treating physician Dr. Eric Sorensen completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment. Dr. Sorensen indicated that Plaintiff was not capable of performing sustained sedentary work on a continuing basis. The doctor indicated that Plaintiff was not capable of performing light work on a regular and continuing basis. His opinion was based, in relevant part, upon his diagnoses of degenerative disk disease, spinal stenosis and chronic fatigue syndrome. AR 332-336, 340.

Thereafter, Plaintiff continued to be seen by Dr. Sorensen for treatment of her lower back pain. AR 337-339.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity, and suffered from the severe impairment of lumbar degenerative disc disease. AR 18. However, the ALJ determined that the impairment does not meet or medically equal a listing impairment. AR 19. Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the

residual functional capacity ("RFC") to lift and carry ten pounds frequently and twenty pounds occasionally, and stand, walk and sit for six hours out of an 8-hour workday, and occasionally climb, stoop, and crouch. AR 19. The ALJ found that Plaintiff could perform past relevant work as a video cash clerk, massage therapist and sales clerk. AR 23. Therefore, he determined Plaintiff was not disabled. AR 23-24.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since April 29, 2005; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) retained the RFC to perform light work. The ALJ determined that Plaintiff could perform her past relevant work as a video cash clerk, massage therapist or sales clerk. AR 18-25.

Here, Plaintiff argues that she disagrees with the ALJ's findings because the ALJ impermissibly dismissed the treating physician's opinion.

## **DISCUSSION**

Plaintiff claims that the ALJ's determination that she suffered from degenerative disc disease yet was able to perform her past relevant work is not supported by substantial evidence, and is the result of legal error, because the ALJ impermissibly dismissed Dr. Eric Sorensen's opinion.

Plaintiff argues that because Dr. Sorensen is her treating physician, his opinion should be given greater weight. He has treated Plaintiff since 2003 and his opinion is supported by "over 100 pages of medical records." Plaintiff asserts that the ALJ's determination to reject Dr. Sorensen's opinion "fails both in fact and law." More particularly, Plaintiff argues that the ALJ's rationale that Dr. Sorensen's opinion is lacking signs, symptoms or other basis is legally insufficient and factually inaccurate because he fails to articulate how Dr. Sorensen's "years of

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

treatment as confirmed by the chart notes is not supported by 'signs' or 'symptoms.'" Plaintiff further argues that Dr. Sorensen's opinion finds support in multiple objective tests, including the MRI dated May 19, 2006. Finally, Plaintiff asserts that Dr. Sorensen's opinion is entitled to "'controlling weight'" as defined in *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).

A. <u>Treating Physician Dr. Sorensen</u>

The ALJ assigned the opinion of Dr. Sorensen, Plaintiff's treating physician, little weight as it lacked "all signs, symptoms, or other basis" for finding Plaintiff incapable of any work.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985).

Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

In finding Plaintiff capable of work, the ALJ relied mainly on the opinion of consulting physician Dr. Tran. In so doing, the ALJ rejected the treating physician's opinion.

Dr. Tran, the consulting physician, performed her own examination of Plaintiff and reviewed all medical records. AR 209-212. During the examination, Plaintiff walked into the examination room with a normal gait, although she was using a cane that was too long. Plaintiff tolerated sitting, her mobility without the cane was normal, and she was able to get on and off the examination table. Plaintiff's range of motion examination included findings that she complained of back pain in the lumbar area and was tender over the right hip and right sciatic notch, she was "mildly positive" on the right, and negative on the left, for the Fabere test. Motor strength was 5/5 in all muscle groups and reflexes were 2/4 bilaterally. AR 210-211. Based on

these findings, Dr. Tran concluded that Plaintiff could perform medium work. AR 212. Dr. Tran's opinion was based upon independent findings that differed from those of the treating physician and can serve as substantial evidence.

While Dr. Tran's opinion can be sufficient to constitute substantial evidence in support of the ALJ's RFC finding, the ALJ must nonetheless properly reject the opinion of the treating source. The ALJ explained that Dr. Sorensen's opinion that Plaintiff was incapable of working was rejected for it "lack[ed] all signs, symptoms, or other basis." This reasoning is not specific, nor legitimate. "If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Orn v. Astrue*, 495 F.3d at 632. The ALJ's review of Plaintiff's medical records included multiple complaints regarding degenerative disk disease, yet the ALJ failed to explain what "signs, symptoms, or other basis" were lacking from Dr. Sorensen's records so as to properly reject his opinion in favor of the consulting physician. There is nothing specific about this statement. Moreover, the ALJ's reference that "the decisions regarding disability and ability to work are reserved to the Commissioner (SSR 96-5p)" is not a legitimate reason based on substantial evidence in the record. Thus, the ALJ's conclusion is not a specific or legitimate reason for rejecting Dr. Sorensen's opinion as to Plaintiff's disability.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has

been thoroughly developed."). Here, the Court has determined that the ALJ did not provide specific and legitimate reasons supported by substantial evidence in rejecting Dr. Sorenson's opinion. Further proceedings are therefore required to allow the ALJ to re-analyze the opinion, consistent with the Ninth Circuit's opinion in *Orn v. Astrue*, 496 F.3d 625.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Shelley L. Craghill-Quinn and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **April 17, 2009**         /s/ **Gary S. Austin**
                         UNITED STATES MAGISTRATE JUDGE